UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SARAH ROSENBERG, individually and on behalf :
of all others similarly situated,                :
                                                 :
                       Plaintiff,                :
                                                 :            **MEMORANDUM & ORDER**
            -against-                            :            20-cv-00297 (DLI) (LB)
                                                 :
MIDLAND CREDIT MANAGEMENT, INC.,                 :
                                                 :
                       Defendant.                :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Sarah Rosenberg ("Plaintiff"), brings this putative class action against Defendant Midland Credit Management, Inc. ("MCM" or "Defendant"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). *See*, *generally*, Class Action Compl. ("Compl."), Dkt. Entry No. 1. Defendant moved to dismiss the complaint. *See*, Def.'s Notice of Mot. to Dismiss, Dkt. Entry No. 11; Def.'s Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Compl. ("Def.'s Mem."), Dkt. Entry No. 11-1. Plaintiff opposed. *See*, Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Compl. ("Pl.'s Opp'n"), Dkt. Entry No. 14. Defendant replied. *See*, Def.'s Reply Mem. in Further Supp. of Def.'s Mot. to Dismiss Pl.'s Compl. ("Def.'s Reply"), Dkt. Entry No. 16. For the reasons set forth below, Defendant's motion to dismiss is granted in part and denied in part.

**BACKGROUND**

Unless otherwise noted, the following facts are drawn from the complaint and its attached exhibits and are presumed true for purposes of this decision. *See*, *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013). Plaintiff is a New York resident and Defendant is a California

company whose primary business involves collection of debts. Compl. at ¶¶ 7-9. Plaintiff is a "consumer" and Defendant is a "debt collector" under the FDCPA. *Id*. at ¶¶ 7, 10.

On September 28, 2019, Defendant sent Plaintiff a debt collection letter (the "September Letter"). *Id*. at ¶¶ 18, 20; *See also*, Compl. Ex. A, Dkt. Entry No. 1-2, at 1. According to the letter, Plaintiff owed Defendant a debt in the amount of $10,521.73, which allegedly originated from Plaintiff's transaction with Capital One Bank (USA), N.A. Compl. Ex. A at 1. The letter also included the following information on its first page, just below the debt account information:

> Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

*Id.* The September Letter was the first written communication Plaintiff received from Defendant concerning the alleged debt. Compl. at ¶ 19.

On October 2, 2019, Defendant sent Plaintiff a follow up letter (the "October Letter") regarding the same alleged debt. *Id.* at ¶ 23; *See also*, Compl. Ex. B, Dkt. Entry No. 1-3. The October Letter was titled "Pre-legal Notification" and included the following:

> Midland Credit Management, Inc. wants to work with you to resolve the above-referenced account. This letter is to inform you that MCM is considering forwarding this account to an attorney in your state for possible litigation. Please pay us at **MidlandCredit.com** or call **877-654-1129** no later than **10/17/2019**. If we don't hear from you or receive payment, MCM may proceed with forwarding this account to an attorney. We would like to make an arrangement with you to resolve the above-reference account using the following:
> 
> - Bi-weekly payment as low as $50 continuing until paid

Compl. Ex. B at 1 (emphasis in original). The letter continued: "The opportunity to pay the amount listed above does not alter or amend your validation rights as described in our previous letter to you." *Id*.

2

Plaintiff filed the instant action, asserting two causes of action for violations of §§ 1692e(2), e(5), e(10), and g. Defendant moved to dismiss the complaint, arguing that the October Letter did not overshadow the September Letter's validation notice. *See*, Def.'s Mem. at 1-2.

## **LEGAL STANDARD**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. New York Cardiothoracic Grp., PLLC*, F.3d 471, 475 (2d Cir. 2009) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The plausibility standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Similarly, "a formulaic recitation of the elements of a cause of action" is insufficient to survive a motion to dismiss. *Id.* at 681 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

As a general matter, a court's determination of a Rule 12(b)(6) motion is limited to the four corners of the complaint. *See*, *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, "[c]onsideration of materials outside the complaint is not entirely foreclosed." *Id.* "A complaint is deemed to include any written instrument attached to it as an exhibit." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (internal citations and quotations omitted). Accordingly, here, the Court may

consider exhibits attached to the complaint, namely the September and October Letters. *See*, Compl. Exs. A, B.

## DISCUSSION

To assert a violation of the FDCPA, a plaintiff must allege that: "(1) the plaintiff is a 'consumer' within the meaning of the Act; (2) the defendant is a 'debt collector'; and (3) the defendant must have engaged in conduct in violation of the statute." *Coburn v. P.N. Fin.*, 2015 WL 520346, at *3 (E.D.N.Y. Feb. 9, 2015). Plaintiff has alleged that she is a "consumer" and Defendant is a "debt collector" within the meaning of the FDCPA. Compl. at ¶¶ 7, 10. As such, the central issue before the Court is whether Defendant engaged in any conduct that violated 15 U.S.C. §§ 1692g and 1692e.

"In evaluating whether a communication violates § 1692g or § 1692e, the Court applies an objective standard by considering how the 'least sophisticated consumer' would understand the debt collection letter." *Paul v. Enhanced Recovery Co., LLC*, 2020 WL 6746792, at *4 (E.D.N.Y Nov. 17, 2020) (quoting *Carlin v. Davidson Fink, LLP*, 852 F.3d 207, 216 (2d Cir. 2017)); *Clomon v. Jackson*, 998 F.2d 1314, 1318 (2d Cir. 1993)). The "least sophisticated consumer" is "uninformed, naïve, or trusting," but makes "basic, reasonable and logical deductions and inferences." *Dewees v. Legal Servicing*, 506 F. Supp.2d 128, 132 (E.D.N.Y. 2007) (internal quotation marks and citation omitted). Under this standard, collection notices are assessed from the standpoint of a person who does not have "even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (internal quotation marks and citation omitted).

**I.      Plaintiff's § 1692g Claim**

"The debt collector's notice to the debtor, required by section 1692g(a), is referred to as the 'validation notice.'" *Weber v. Comput. Credit Inc.*, 259 F.R.D. 33, 37 (E.D.N.Y. 2009) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)). The validation notice affords the consumer the right either to dispute or verify the alleged debt within thirty days of receiving the initial written notice of the debt. *See* 15 U.S.C. § 1692g(b). The debt collector's collection activities and communications can continue during the 30-day period, but "may not *overshadow or be inconsistent* with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *Id.* (emphasis added).

The instant action deals with two separate letters Defendant sent Plaintiff: the September and October Letters. *See*, Compl. Exs. A, B. "[C]ritical in these multiple letter cases is the question of whether the subsequent letter so 'overshadows' a proper validation notice in the earlier letter as to effectively negate its prophylactic effect." *Weber*, 259 F.R.D. at 39. "[T]he statute is violated if a debt collector's follow-up communication, sent within the validation period, conveys information 'in a confusing or contradictory fashion so as to cloud the required message with uncertainty.'" *Id.* (quoting *DeSantis v. Comput. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001)). The Court finds that Plaintiff sufficiently has alleged that the October Letter overshadowed the September Letter's validation notice.

The September Letter constituted a validation notice, giving Plaintiff the opportunity until October 28, 2019 either to dispute or validate the alleged debt. Compl. Ex. A at 1. Defendant then sent the October Letter, which demanded Plaintiff pay the alleged debt by October 17, 2019 and warning that, "[i]f we don't hear from you or receive payment, MCM may proceed with forwarding this account to an attorney." Compl. Ex. B at 1. Defendant argues that the October Letter was

5

part of lawful collection activities under § 1692g(b) because the Letter was a "Settlement Letter" and did not threaten a lawsuit. *See*, Def.'s Mem. at 4-5; Def.'s Reply at 7-9. Defendant's argument lacks merit.

"Courts have confirmed there is nothing inherently confusing or overshadowing about including a settlement offer in the debt validation notice." *Akoundi v. FMS, Inc.*, 2014 WL 3632008, at *5 (S.D.N.Y. July 22, 2014) (citations omitted). Also, "[t]he use of conflicting deadlines is not itself a violation of the FDCPA." *Id.* (citing *Wiener v. Bloomfield*, 901 F. Supp. 771, 775 (S.D.N.Y. 1995)). To support its argument, Defendant relies on *Akoundi*, 2014 WL 3632008; *Omeogbeme v. Risk Mgmt. Alternatives, Inc.*, 2003 WL 21909773 (E.D.N.Y. Aug. 4, 2003); and *Santora v. Capio Partners, LLC.*, 409 F. Supp.3d 106 (E.D.N.Y 2017). *Id.* at 5. However, the reliance on these cases is misplaced. Contrary to the present case, *Akoundi*, *Omeogbeme*, and *Santora* dealt with actual settlement offers and the courts there found that the letters clearly conveyed to the consumers that the imposed deadlines represented expiration dates for the settlement offers. *See*, *Akoundi*, 2014 WL 3632008, at *5; *Omeogbeme*, 2003 WL 21909773, at *3; *Santora*, F. Supp.3d at 109.

The October Letter did not include a settlement offer. The Letter is devoid of the word "settlement" or of any language resembling the concept of settlement. *See*, *generally*, Compl. Ex. B. What the October Letter offered Plaintiff was a payment arrangement until the entire debt was paid, not a settlement. *See*, Compl. Ex. B at 1. In addition, nothing in the October Letter suggested that the October 17, 2019 deadline was connected in any way to the offer of the payment arrangement.

Plaintiff alleges that she "read the [October Letter's] statements and was led to believe that if she did not pay the debt or make repayment arrangements by the deadline given in the October

6

2, 2019 letter, that she would be sued." Compl. at ¶ 25. The Court finds that Plaintiff's interpretation is a reasonable one, especially from the least sophisticated consumer's perspective. *See*, *Shapiro v. Riddle & Assocs., P.C.*, 240 F. Supp.2d 287, 290 (S.D.N.Y. 2003) ("[W]hen determining whether a debt collector's notice violates Section 1962g, a court is to apply 'an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector.'") (quoting *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)).

Plaintiff's interpretation is supported by the decision in *Laster v. Cole*, 2000 WL 306848, at *3 (E.D.N.Y. Mar. 20, 2000). The *Laster* court considered the following statement from a debt owner's attorney: "We have been asked to make litigation recommendations to our client. Prior to doing so, we will afford you this opportunity to settle this matter. Accordingly, we will hold this matter in abeyance for seven days awaiting your remittance." *Id*. The court found that "[t]he plain meaning of this language to the least sophisticated consumer is that unless that [the consumers] send payment within seven days, [the attorney] will recommend that the [debt owner] file a lawsuit against them. *Id*. The court held that the language threatened the consumers with adverse consequences. *Id*. at *4.

Furthermore, the title of the October Letter, "Pre-legal Notification," reinforces the interpretation that the Plaintiff was threatened with a lawsuit. *See*, *Wiener*, 901 F. Supp. at 775 (a "threat that litigation would be prepared if no response were received within ten days, the heading suggesting that litigation already had been commenced, and the notation in a box on the bottom of the letter reading 'DEADLINE: 03/11/95'" overshadowed the validation notice in violation of § 1962g). Thus, the newly imposed October 17, 2019 deadline and the threat of a lawsuit overshadowed the fact that Plaintiff had until October 28, 2019 to dispute the debt.

7

When there are overshadowing or contradictory statements, "there is a need for some clarifying transitional language" to avoid a FDCPA violation. *Weber*, 259 F.R.D. at 40; *See also*, *Savino*, 164 F.3d at 85. Defendant contends the October Letter contained such language: "The opportunity to pay the amount listed above does not alter or amend your validation rights as described in our previous letter to you." *See*, Compl. Ex. B. at 1; *See also*, Def.'s Mem. at 6-8; Def.'s Reply at 2-7. The Court finds that this purported transitional language is insufficient to warrant a dismissal of the complaint.

Defendant heavily relies on *Weber* to support its contention that the purported transitional language clarified any overshadowing effect. *See*, Def.'s Mem. at 6-7. Defendant claims that "the *Weber* court found that, even a passing reference to a prior communication containing the Validation Notice was sufficient to apprise a consumer of her previously described rights." *Id.* at 7. This is an inaccurate reading of *Weber*. In *Weber*, the court found that the debt collector's second letter did not overshadow the first letter's validation notice because the second letter did not contain any overshadowing or contradictory language in the first place. *See*, *Weber*, 259 F.R.D. at 41. The court held that "the second letter does not demand immediate payment or threaten adverse consequences, and is not overshadowing." *Id.* The *Weber* court did not analyze whether the second letter contained adequate transitional language.

In *Sarno*, also relied on by Defendant, the Court of Appeals for the Second Circuit affirmed the district court's decision to dismiss a under § 1692g. *See*, *Sarno*, 435 Fed. Appx. 44, 45 (2d Cir. 2011). Similar to *Weber*, the collection letter in *Sarno* did not contain any language demanding immediate payment or threating adverse consequences, and neither the district court nor the Second Circuit analyzed the curing effect of transitional language. *See*, *Id*. at 45; *See also*, *Sarno v. Midland Credit Mgmt., Inc.*, 2011 WL 349974, at *1, 4 (S.D.N.Y. Jan. 31, 2011).

8

Plaintiff alleges that, "by stating that Plaintiff has until October 17, 2019, which is less than three weeks from the date of the initial collection letter, or risk [sic] having the account forwarded to an attorney for possible litigation, Defendant shortened Plaintiff's validation period of 30 days from receipt of the letter and overshadowed her rights."  Compl. at ¶ 27.  The Court finds this reading of the October Letter reasonable.  Although the purported transitional language refers Plaintiff to her "validation rights" in the September Letter, it does not clarify the contradicting deadlines and the threat of a lawsuit.  *See*, *Weber*, 259 F.R.D. at 39 ("Only when there is insufficient transitional language or contradictory information in the body of the letter is a claimed violation cognizable.") (citing *Savino*, 164 F.3d at 85).

Ultimately, "[a] complaint alleging a violation of § 1692g for being overshadowing or contradictory may survive a motion to dismiss if (1) the plaintiff pleads a contradiction between the demand language and the validation language, and (2) it is possible that the plaintiff could prove that the contradiction would mislead the least sophisticated consumer into disregarding his or her rights under the validation notice." *Santora v. Capio Partners, LLC.*, 409 F. Supp.3d 106, 108-09 (E.D.N.Y 2017) (internal quotation marks and citations omitted).  The complaint here established both prongs by demonstrating the contradiction between the September Letter and the October Letter and the possibility of the contradiction misleading Plaintiff to abandon her rights under the validation notice.  Therefore, Defendant's motion to dismiss Plaintiff's § 1692g claim is denied.

**II.      Plaintiff's 15 U.S.C. § 1692e Claims**

Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Prohibitive conduct under this section includes falsely representing "the character, amount, or legal status" of the debt.

9

15 U.S.C. § 1692e(2).  The section also prohibits any "threat to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  Additionally, § 1692e "contains a non-exhaustive list of practices within the purview of this prohibition including, *inter alia*, '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.'"  *Sutton v. Fin. Recovery Servs., Inc.*, 121 F. Supp.3d 309, 313 (E.D.N.Y. 2015) (quoting 15 U.S.C.§ 1692e(10)).

The Court finds that Plaintiff's §§ 1692e(2) and e(5) claims only include bald allegations that Defendant violated these sections of the FDCPA without proffering any facts that would allow the Court to discern reasonably what the allegedly violative conduct was.  *See*, *Santora*, 409 F. Supp.3d at 110 (citing *Moore v. Diversified Collection Servs., Inc.*, 2009 WL 1873654, at *3 (E.D.N.Y. June 29, 2009).  Consequently, Plaintiff has failed to allege plausible claims under §§ 1692e(2) and e(5), and they are dismissed with prejudice.

However, the Court finds that Plaintiff has pled a plausible claim under § 1692e(10).  A collection notice is deceptive when "it can be reasonably read to have two or more different meanings, one of which is inaccurate."  *Russell*, 74 F.3d at 35.  To survive a motion to dismiss, a plaintiff must identify at least two reasonable interpretations of a collection notice and show that the deception arising from those interpretations is material.  *See*, *Gissendanner v. Enhanced Recovery Co., LLC*, 793 F. App'x 5, 7 (2d Cir. 2019).  A false, deceptive, or misleading statement is "material" if it would "frustrate a consumer's ability to intelligently choose his or her response." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 86 (2d Cir. 2018) (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)).

It is reasonable to conclude that Defendant's offer of conflicting deadlines in the September and October Letters, as well as the threat of a lawsuit, constitutes a deceptive means to collect a

10

debt in violation of § 1692e(10). *See*, *Laster*, 2000 WL 306848, at *6. As discussed above, the least sophisticated consumer could have read the October Letter and concluded that s/he had to submit payment by October 17, 2019 and did not have the right to contest the validity of the debt within thirty days pursuant to the validation notice. Therefore, the least sophisticated consumer could read these statements to have two different meanings, one of which was inaccurate. *See*, *Id*.; *See also*, *Russell*, 74 F.3d at 35. Accordingly, Defendant's motion to dismiss Plaintiff's § 1692e(10) claim is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the complaint is granted in part and denied in part. Plaintiff's claims under §§ 1692e(2) and e(5) are dismissed with prejudice. Defendant's motion to dismiss Plaintiff's claims under §§ 1692e(10) and g is denied.

SO ORDERED.

Dated: Brooklyn, New York
       March 31, 2021

/s/
DORA L. IRIZARRY
United States District Judge